DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CIC GROUP, INC., ) | |
| ) | CASE NO. 5:10-CV-02885 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER RE SUMMARY JUDGMENT |
| SCOTT MITCHELL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before the Court is Defendant Scott Mitchell's Motion for Summary Judgment. The Court has reviewed Defendant's moving papers (ECF 84), Plaintiff's opposition (ECF 85) and Defendant's reply (ECF 86). The Court heard argument on the motion on March 20, 2012 (ECF 91). Thereafter the Court accepted and reviewed supplemental memoranda from both parties (ECF 92, 93). Based on a careful review of the arguments and authorities presented, this Court DENIES Defendant's motion for summary judgment, for the reasons set forth below.

FACTUAL BACKGROUND

CIC Group, Inc ("CIC") is a Missouri corporation with its principal place of business in St. Louis, Missouri. (ECF 1-3 at 10). Defendant Mitchell was the President, Chief Executive Officer, Director and sole shareholder of Scott Process Systems, Inc. ("SPSI"), an Ohio corporation in the business of fabricating process, power and nuclear piping supplies. (ECF 1-3 at 11). In April of 2009 CIC began conducting due diligence on SPSI in anticipation of a potential stock purchase. (ECF 1-3 at 11). On July 31, 2009 CIC entered into a Stock Purchase

Agreement ("Agreement") with Mitchell, and acquired all of the shares of SPSI. (ECF 1-3 at 11).

The Agreement contained Representations and Warranties of Shareholder (ECF1-3 at 23-31, para. 2), limited the damages recoverable by CIC under the contract to $300,000 (ECF 1-3 at 36, para.9) and included an integration clause (ECF 1-3 at 38, para.19).

The Agreement also contained both choice-of-forum and choice-of-law provisions. The forum clause called for "any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement," to be brought in the courts of the defending party. (ECF 1-3 at 37, para. 25). Missouri law was declared to govern, "[t]his agreement and all questions relating to its validity, interpretation, remediation and enforcement..." (ECF 1-3 at 37, para.12).

## PROCEDURAL HISTORY

On August 24, 2010 CIC filed suit in the Circuit Court of St. Louis County in the State of Missouri. The suit contained two counts.

In Count I for negligent misrepresentation Plaintiff alleged the work-in-progress ("WIP") schedules, financial statements and inventory valuations provided by Defendant to Plaintiff were inaccurate. In Count II Plaintiff alleged Defendant fraudulently misrepresented the chances of recovering money owed by one of SPSI's customers, Black & Veatch. In both counts Plaintiff alleged that CIC would not have entered into the Agreement if Defendant had fully and truthfully disclosed all information regarding SPSI's WIPs, financial statements, inventory valuations and disputed contracts.

Basing jurisdiction on diversity of citizenship, Defendant removed the case to federal court in Missouri and then brought a motion to dismiss the complaint or, in the alternative,

2

transfer the action under § 1404 (a). Magistrate Judge Medler, applying Missouri and federal law, found that even though Plaintiff had only alleged tort causes of action, the allegations of the complaint made it clear that the dispute "arose" from the contract, which was all that was required under the broad language of the choice-of-forum clause in the agreement. (ECF 84-1, pg. 5 of the Opinion). Magistrate Judge Medler therefore held that the forum selection clause was applicable to the tort causes of action, and transferred the case to the United State District Court for the Northern District of Ohio, Eastern Division. (*Id.*, at 5,6).

On July 20, 2010 Defendant filed this motion for summary judgment. Defendant argues that CIC's tort claims are, in fact, breach of contract claims; that Ohio law does not recognize a cause of action for fraudulent breach of contract; that CIC did not allege or prove a special duty or relationship that could provide a predicate for a claim of misrepresentation under Ohio law, and that all of the representations alleged were or should have been discovered in CIC's due diligence, which CIC failed to adequately perform. (ECF 84). Defendant further contends there are no triable issues of material fact.

Opposing the motion, CIC urges that Missouri law applies; that the legal duties which are the subject of the action are separate from duties owed by contract, and may be sued upon in tort when breached; that no special duty or relationship is required for recovery for misrepresentation; and that the Agreement's merger clause does not preclude recovery for misrepresentation in the inducement of the contract. (ECF 85). Plaintiff insists there are multiple triable issues of material fact.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962.) However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby*, 477

U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment.")

## LEGAL ANALYSIS

### I. MISSOURI LAW APPLIES IN THE TRANSFEREE VENUE

The United States Supreme Court, in *Van Dusen v. Barrack*, considered the effect of a §1404 (a) transfer of venue on the law applicable to the transferred case. The Court held that, "where defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change in venue." *Van Dusen v. Barrack*, 376 U.S. 612 at 639 (1964). Thus, a change of venue under §1404(a), "[s]hould be, with respect to state law, but a change of courtrooms." *Id. Van Dusen* remains good law and requires this Court to apply Missouri choice-of-law rules in determining whether the parties' contract provision specifying Missouri law will be honored.

### II. MISSOURI LAW UPHOLDS VALID CHOICE-OF-LAW CLAUSES UNLESS APPLICATION OF THE CHOSEN LAW WOULD VIOLATE A FUNDAMENTAL POLICY OF THE FORUM STATE

5

The Missouri Supreme Court, in a 2012 *en banc* decision, declared, "Generally, parties may choose the state whose law will govern the interpretation of their contractual rights and duties. A valid choice of law provision in a contract binds the parties." *State ex. rel. McKeague v. Cordonnier*, 357 S.W.3d 597,600 (Mo. 2012) (internal citations omitted). Under Missouri law, a choice-of-law clause is enforceable unless application of the agreed-to law is contrary to a fundamental policy of Missouri, or other forum state. *Id., Sturgeon v. Allied Professionals Co.*, 344 S.W.3d 205, 210 (Mo. Ct. App 2011) *(*acknowledging the fundamental policy analysis is dispositive under Missouri law); *Cicle v. Chase Bank USA*, 583 F. 3d 549, 553 (8th Cir. 2009) (choice-of-law clause enforceable in Missouri unless contrary to fundamental policy); *H & R. Block Tax Services LLC v. Franklin*, 691 F.3d 941, 943 (8th Cir. 2012) (same, quoting and citing *Cicle*).[1]

In *McKeague* the defendant entered into contracts with purchasers in many states; all of the contracts specified Missouri law would apply. With a class action threatened, defendant argued the Missouri choice of law clause should restrict any potential plaintiff class members to those who executed the contract in Missouri. The court disagreed. The court found the choice-of-law provision binding and refused to limit the class because the defendant had not identified any state that had a fundamental policy violated by the causes of action alleged. See also: *Sturgeon v. Allied Professionals Co.*, 344 S.W. 3d 205, 210 (Mo. Ct. App. 2011); *Cicle v. Chase*

---

[1] There was some initial confusion in the federal courts as to whether Missouri law, in evaluating a choice-of-law clause, would require a determination of whether the agreed-upon law violated a fundamental policy, or the fuller analysis prescribed in Restatement (Second) §§187(2) and188. See discussion in *Saey v. Xerox Corp.*, 31F. Supp. 2d 693, 697-698 (E.D. Mo. 1988). As the cases cited above demonstrate, recent state and federal cases have used the abridged analysis, which only looks only to a violation of fundamental policy.

6

*Bank USA*, 583 F.3d 549 (8th Cir. 2009) (applying Missouri law); *H& R Block Tax Services LLL v. Franklin*, 2012 WL 3870574 **2 (8th Cir. 2012) (applying Missouri law).

Plaintiff's general allegations that misrepresentations induced its entry into the contract do not invalidate the clause: A choice-of-law provision is valid unless the choice-of-law provision, itself, was induced by fraud. General allegations of fraud in the inducement do not invalidate a choice-of-law clause. *Cf. Scherk v. Alberto-Culver* Co., 417 U.S. 506, 519 n.14 (1974) ("forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion"); *Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.* 254 F. 3d 753, 757 (8th Cir.2001) (under Missouri law, general allegations of fraud in the inducement are insufficient to raise the issue that the forum-selection clause in the contract is unenforceable).

Since the clause is valid under Missouri law, the agreed-upon law will be applied unless a showing is made that recovery in this case will violate a "fundamental" Ohio policy. A fundamental policy must be "substantial" and generally involves protective principles or legislation, e.g. those "designed to protect a person against the oppressive use of superior bargaining power." Restatement (Second) §187, Comment on Subsection 2. *See Doerhoff v. General Growth Properties, Inc*., 2006 WL 32100502 *6 (W.D. Mo. Nov. 6, 2006) (refusing to apply New York because it would be contrary to Missouri's unconscionability standards); *Sturgeon,* 344 S.W.3d at 210 (declining to apply California law because it would be contrary to Missouri public policy prohibiting mandatory arbitration provisions in insurance contracts). The recovery sought here is for misrepresentations in the course of a business transaction. Since Defendant has not put forth any fundamental policy of Ohio that would be violated by Plaintiff's

7

recovery for misrepresentations, Defendant has not demonstrated any basis to refuse to enforce the valid contractual choice-of-law clause.[2]

## II. THE AGREEMENT'S CHOICE-OF-LAW PROVISION IS APPLICABLE TO PLAINTIFF'S TORT CLAIMS BECAUSE THEY ARE "INTEGRALLY LINKED" TO THE CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES.

In determining whether or not the contractual choice-of-law provision applies to the Plaintiff's tort claims, there are two issues: 1) the breadth of the language of the choice-of-law clause, and 2) the degree to which the tort claims will require reference to or construction of the Agreement or the statements giving rise to the tort claim are integrally linked to the contractual relations. *Inacom Corp. v. Sears. Roebuck and Co.*, 254 F. 3d 683 (8th Cir. 2001); *Greenwood v. Sherfield,* 895 S.W.2d 169 (Mo. Ct. App. 1995); *Express Scripts, Inc. v. Walgreen Co.*, 2009 WL 45474198 (E.D. Mo. 2009).

The choice-of-law clause in the Agreement states:

Controlling Law. This Agreement and all questions relating to its validity, interpretation, remediation and enforcement (including, without limitation, provisions concerning limitations of actions) shall be governed by and construed in accordance with the domestic laws of the State of Missouri, notwithstanding any choice-of-laws doctrines of such jurisdiction or any other jurisdiction which ordinarily would cause the substantive law of another jurisdiction to apply....

---

[2] A fuller §187 (2) analysis would not change the outcome. Section 187 (2) directs the court to determine the law that would have controlled in the absence of the contract clause. To achieve this, the Restatement proposes the "substantial contacts" test of § 188. It must be noted that it is unclear §§ 187 and 188 are even applicable in the case of a §1404 (a) transfer: In the absence of a contractual provision *Van Dusen* requires use of Missouri law. But even if §§ 187 and 188 are applicable and even if Ohio were to be found to have more substantial contacts, the choice of Missouri law would still be honored since there is no evidence Missouri law violates any substantial Ohio public policy.

8

This clause is broad, sweeping in "all questions relating to validity, interpretation, remediation, and enforcement." A claim of fraud or negligent misrepresentation in the inducement to contract directly challenges the validity of the contract, and is therefore within the scope of claims governed by the Agreement's choice-of-law provision. (*Compare Inacom Corp. v. Sears, Roebuck and Co.*, 254 F. 3d 683, 687 (8th Cir. 2001) in which the court held the clause, "Agreement shall be governed..." to be too narrow to include tort claims).

*Express Scripts, supra.,* supports inclusion of the tort claims. In that case, Walgreen brought a counterclaim against Express Scripts for the tort of conversion. The Agreement at issue specified, "This Agreement shall be construed and governed in all respects according to the internal laws in the State of Missouri." Walgreen argued that the provision did not apply to its tort claim. The court disagreed.

Pointing out that sections of the agreement would have to be analyzed in determining the claim of conversion, the court held that the Agreement's "extremely broad " choice of law provision "clearly encompasses the conversion claim because the tort claim arises directly out of the terms of the Agreement and the contractual relationship between the parties." *Express Scripts* at *3.

Additional support for application of a contract provision to a related tort is provided by *Greenwood v. Sherfield*, 895 S.W. 2d 169 (Mo. Ct. App. 1995). In *Greenwood* the issue was whether a claim for tortious interference with contract was subject to arbitration under the parties' contract providing arbitration for any controversy or claim arising out of their agreement. The court explained, "Arbitration is compelled where a tort claim arises directly out of a dispute regarding the terms of the parties contractual relationship or where the statements

9

giving rise to a tort claim are integrally linked to the contractual relationship between parties." *Id.* at 174-5 (internal citations omitted).

*Express Scripts* and *Greenwood* are in line with multiple other Eighth Circuit cases. See, e.g. *Holden Farms, Inc. v. Hog Slat Inc.*, 347 F.3d 1055 (8th Cir. 2003) (if analysis of a tort claim connected to a contract involves interpretation of the contract, then the contract's choice-of-law provisions apply); *Judson v. ConAgra Poultry Co.*, 484 F.3d 496, 500, 502 (8th Cir. 2007) (arbitration clause in contract stating "the laws of Arkansas...shall exclusively apply and govern this agreement" included contract-related tort claims); *Northwest Airlines v. Astraea Aviation Serv.*, 111 F. 3d 1386 (8th Cir. 1997) (if analysis of the tort claims will involve interpretation of the contract, the contractual choice-of-law provisions apply to the tort claims); *Northwest Hamilton Lake Dev. Co. v. Am. Federal Inc.*, 2006 WL 381499 *10 (E.D. Mo.) (finding plaintiff's conversion claim subject to the contractual choice-of-law provision); *Peter Kiewit Sons'Inc. v. Aster, LP*, 684 F Supp. 2d 1126, 1134-1135 (D. Neb. 2010) (trade secret violation subject to choice-of-law provision because the tort claim is one "which the parties could have resolved by an explicit provision" and the claim is "sufficiently intertwined" with the interpretation of the contract). *But see*: *Service Vending Co. v. Wal-Mart Stores, Inc*. 93 S.W.3d 764, 768 (Mo. Ct. App. 2002) (requiring specific language to include tort claims in contractual choice-of-forum clause).

This Court finds that the choice-of-law provision in the Agreement, which extends to "all questions" relating to the validity and interpretation of the contract, is broad enough to encompass the Plaintiff's tort claims. The Court further finds that reference to the contract will be necessary in the resolution of these claims and that the statements giving rise to the torts are

10

integrally linked to the contractual relationship between the parties. For these reasons, the Court finds that the Plaintiff's tort claims are subject to the Agreement's contractual choice-of-law provision and are governed by Missouri law. These holdings are in accord with Magistrate Judge Medler's decision that Plaintiff's tort claims are governed by the Agreement's choice-of-forum provision.

### III. ALTERNATIVELY, PLAINTIFF'S CLAIMS ARE GOVERNED BY MISSOURI LAW BASED ON THE "SUBSTANTIAL CONTACTS" TEST UNDER MISSOURI'S CHOICE-OF-LAW RULES

Again, under *Van Dusen*, *supra*, Missouri choice-of-law rules control.  Missouri looks to the "substantial contacts" test in Restatement (Second) of Conflict of Laws to determine choice of law in tort cases. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969); *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F. 2d 1204, 1216 (8th Cir. 1973). When fraud and misrepresentation are at issue, and misrepresentations and reliance occur in more than one state, the law of the state with the most significant relationship to the parties and legal dispute controls. *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 277, 293 (D. Mass 2010) (applying Missouri law). Under Restatement (Second) Conflict of Laws §148 (2) respecting choice-of-law in cases alleging fraud and misrepresentation, courts are directed to consider the place where plaintiff acted in reliance on defendant's representations, where plaintiff received the representations, where defendant made the representations, the domiciles or place of incorporation of the parties, and the place of performance or any tangible thing at issue. The key issues are where plaintiff acted in reliance, where the plaintiff received the representations, and where the defendant made the representations. § 148 (2) Comments (f), (g) and (h).

Here, CIC is a Missouri corporation with its principal place of business in Missouri,

11

Defendant Scott made key representations in Missouri, CIC received Defendant's representations in Missouri, relied upon them in Missouri and CIC's damages occurred in Missouri. (ECF 85 at 493). In *St. Louis Union Trust Co. v. Merrill Lynch,* 562 F. 2d 1040,1054 n.20 (8th Cir. 1977), the Eighth Circuit upheld application of Missouri tort law, under Missouri choice-of-law principles, where the plaintiffs were Missouri citizens, acted in reliance on defendant's representations in Missouri and suffered financial loss in Missouri. Similarly, in *Inacom Corp.v. Sears, Roebuck and Co.*, 254 F. 3d 693, 688 (8th Cir 2001), the Eighth Circuit, relying upon §148 (2), chose to apply the law of the state in which plaintiff received defendant's representations, plaintiff relied upon the representations, and plaintiff suffered its injuries, despite the fact the defendant Sears was headquartered in another state. *See also: East Maine Baptist Church v. Union Planters Bank*, *N.A.*, 244 FRD 538, 543 (E.D. Mo. 2997) (decertifying plaintiffs' class action claim for negligent misrepresentation and conspiracy to defraud because Missouri's choice of law doctrine would likely require application of multiple state laws, since the "significant contacts" weighs heavily in favor of the state in which the plaintiff received and acted on defendant's representations).

As Missouri is the place of the plaintiff's reliance and damages, the place where plaintiff received defendant's representations, and the place defendant made key statements at issue, Missouri is the state with the most significant contacts and, under Restatement (Second) § 148, Missouri law should control.

## IV. THE DUTIES VIOLATED BY FRAUDULENT AND NEGLIGENT MISREPRESENTATIONS ARE SEPARATE FROM CONTRACTUAL OBLIGATIONS AND GIVE RISE TO INDEPENDENT TORT CLAIMS

12

Defendant argues that the duties CIC alleges were violated arose solely from the Agreement. Missouri, like most other states, soundly rejects this argument. When a contract is induced by tortious misrepresentations, defendant's conduct gives rise to tort and contract claims. *Trimble v. Pracna*, 167 S.W.3d 706, 711 (Mo. 2005) (fraudulent inducement and failure to perform under the contract are distinct claims); *Davis v. Cleary Bldg. Corp.*, 143 S.W.3d 659, 699 (Mo. Ct. App. 2004) (fraudulent inducement gives rise to both contract and tort claims); *Roth v. La Societe Anonyme Turbomeda France*, 120 S.W. 3d 764,773-774 (Mo. Ct. App. 2003) (breach of contract claim does not preclude tort claim for fraudulent inducement).

When one induces another to enter a contract through misrepresentations, there is "a separate wrong," a tort that is distinct from claims based upon the contract itself. *Kincaid Enters. v. Porter*, 812 S.W.2d 892, 900 (Mo. Ct. App. 1991). As the court explained in *Grus v. Patton,* 790 S. W. 2d. 936, 941 (Mo. Ct. App. 1990), a fraudulent inducement claim may relate to contractual duties but this does not transform the claim to one for breach of contract:

> The fundamental difference between tort and contract lies in the nature of the interest to be protected. "Tort actions are created to protect the interest in freedom from various kinds of harms. The duties of conduct which give rise to them are imposed by law, and are based primarily on social policy, and not necessarily upon the will or intention of the parties.... Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent and are owed only to specific individuals named in the contract."

*Id.*, quoting Prosser, Torts, §92 at 613 (4th ed. 1971).

The merger clause in the Agreement does not preclude an action for misrepresentation in the inducement of the contract in this case. As the court explained in *Maples v. Charles Burt Realtor, Inc.*, 690 S.W. 2d  202, 212-213, "[a] party may not, by disclaimer or otherwise,

13

contractually exclude liability for fraud in inducing that contract." *Id*. Any such disclaimer is "wholly ineffective to immunize defendant from liability for specific fraudulent representations." *Id*. (internal citations omitted).

As Plaintiff correctly points out, "[the] rule that all prior and contemporaneous oral agreements and representations are merged in the written contract...does not apply to fraudulent misrepresentations made for the purpose of inducing a party to enter such a contract." *Id.* See also: *Pinken v. Frank*, 704 F.2d 1019, 1023 (8th Cir 1983) (under Missouri law evidence outside the contract may be introduced to establish plaintiff was tortiously induced to enter the contract); *Harriman Oil Co. v. Baker*, 2012 U.S. Dist. LEXIS 9019 at *6-7 (E.D. Mo. Jan. 26, 2012) (under Missouri law, a contracting party cannot exclude liability for fraud in inducing plaintiff's entry into the contract.)

Plaintiff's complaint does not allege contractual breach, and the counts set forth, while involving a breach of contract, are properly founded and recognized in Missouri tort law.

### V. UNDER MISSOURI LAW, NEITHER FRAUDULENT NOR NEGLIGENT MISREPRESENTATION REQUIRE A SPECIAL DUTY OR RELATIONSHIP

The elements of fraudulent misrepresentation in Missouri are:

(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon, and (7) the hearer's consequent and proximately caused damages.

*Jennings v. SSM Health Care St. Louis,* 355 S.W.3d 526 (Mo. Ct. App. 2011), citing *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W. 3d 848, 868 (Mo.App. E.D. 2000).

14

The elements of negligent misrepresentation in Missouri are:

(1) the speaker supplied or omitted information in the course of business; (2) due to the speaker's failure to exercise reasonable care, the information was false; (3) the speaker provided this information in a particular business transaction; and (5) as a result of the listener's reliance on the statement, he or she suffered a pecuniary loss.

*Id.*, at 537-538, citing *Ziglin v. Players MH, L.P.*, 36 S.W.3d 786,790 (Mo. App. E.D. 2001).

The court in *Kesserling v. St. Louis Group, Inc.* explained the difference between the two torts in Missouri law:

There are only two differences between a fraudulent and negligent misrepresentation. First, fraudulent misrepresentation requires that the person *knowingly or recklessly* supply false information, whereas negligent misrepresentation requires no such knowledge or recklessness. Second, negligent misrepresentation requires that the information be supplied in the course of the defendant's business.

*Kesserling v. St. Louis Group, Inc.*,74 S.W.3d 809,813 (Mo Ct. App. 2002) (emphasis in original).

While Ohio may require a "special relationship" between the parties to allow recovery for negligent misrepresentation, *Doe v. Sexsearch,* 551 F. 2d 412, 418 (6th Cir. 2008), Missouri does not; it substitutes the requirement that the information be supplied to a limited audience in the course of the defendant's business. Since Defendant and his employees provided Plaintiff and Plaintiff's representations with information in regard to a specific business transaction, Missouri law is satisfied.

### VI. DISPUTED QUESTIONS OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD AND NEGLIGENCE CLAIMS

This record bristles with conflicting claims. Through detailed submissions of depositions, affidavits and documentary evidence, Plaintiff has put before this Court evidence of multiple

15

omissions, misstatements and conflicting representations by Defendant, reliance by Plaintiff, and loss. Despite Defendant's position as the moving party, Mitchell, too, has identified areas of disputed fact. The Court will highlight just a few.

> * The parties dispute whether or not Plaintiff reasonably relied upon Defendant's representations, with Defendant contending CIC failed to conduct sufficient due diligence. (ECF 85 at 487; ECF 84-1 at 410). This material factual dispute is relevant to both causes of action.
>
> *The parties dispute whether the collectibility of the Black & Veatch receivable was relied upon by Plaintiff in making a decision to enter into the Agreement. (ECF 85 at 489; ECF 84-1 at 411). This material factual dispute is relevant to Count II.
>
> *The parties dispute Defendant's role in preparing SPSI's WIP schedules. Mitchell represented these as accurate, but they were later determined to overstate SPSI's position by $6,000,000. (ECF 92 at 946). Defendant has made inconsistent statements regarding his participation in preparing and reviewing the WIP schedules. (*Id.*) This material factual dispute is relevant to Count I.

The Court could literally go on for pages citing material factual disputes but, since summary judgment may only be granted if there are no disputed issues of material fact, these three examples provide ample proof Defendant's motion must be denied.

16

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied as to both counts of Plaintiff's complaint. The parties are ordered to submit briefs no later than March 18, 2013 on the issue of Plaintiff's right to a jury trial in this action.

IT IS SO ORDERED.

| | |
|---|---|
| February 27, 2013 | /s/ David D. Dowd, Jr. |
| Date | David D. Dowd, Jr.<br>U.S. District Judge |